[No. 18710. Department One. January 6, 1925.]

H. M. ASBURY, *Appellant,* v. G. A. MILLER *et al., Respondents,* BROWN SHOE COMPANY *et al., Interveners and Appellants.*[1]

CHATTEL MORTGAGES (43-2) — VALIDITY — FAILURE TO RECORD — RIGHTS OF SUBSEQUENT MORTGAGEES. A second mortgagee of a stock of goods, takes subject to a prior mortgage, where he had knowledge of the existence thereof, although the first mortgage was not filed for record within the ten days of its execution as required by law.

SAME (81) — FORECLOSURE — OPERATION AND EFFECT — RIGHTS OF CREDITORS. The sheriff having taken possession of mortgaged chattels and sold the same on foreclosure, general creditors who have acquired no lien on the property cannot thereafter question the validity of the mortgage.

Appeal from a judgment of the superior court for Yakima county, Gilbert, J., entered March 21, 1923, upon findings in favor of the defendant, in an action to enjoin a mortgage foreclosure sale, tried to the court. Affirmed.

*Holden & Shumate,* for appellant.

*Joseph C. Cheney,* for respondents.

*C. E. Udell* and *J. C. Hauschild,* for interveners and appellants.

PEMBERTON, J.—In November, 1921, J. H. Garvey and A. E. Miller opened a grocery store at White Swan,

[1]Reported in 232 Pac. 360.

Washington, and continued its operation until March, 1922, when Miller sold his interest to J. H. Garvey. On December 2, 1922, the store was sold and transferred to G. A. Miller, respondent. At the time of the purchase, Garvey was indebted to the Yakima Grocery Company in the amount of $750. This indebtedness had been orally guaranteed by appellant H. M. Asbury. On December 2, Asbury paid the Yakima Grocery Company the $750 and secured a mortgage upon the stock of goods for the amount so paid. Prior thereto, on November 17, 1921, A. E. Miller and J. H. Garvey, the then owners of the stock of goods, mortgaged the same in the amount of $1,000 to one John Smith. This mortgage was thereafter assigned to the respondent Union State Bank. This mortgage was acknowledged on the 17th day of November, 1921, before C. E. Reinig, notary public, at White Swan, and then sent by mail to Joseph C. Cheney, attorney for respondent Union State Bank. Mr. Cheney received it on the 27th day of November and filed it in the auditor's office on November 28, 1921. Some one changed the date of the mortgage and the date of the acknowledgment from November 17 to November 19. These being the admitted facts, the mortgage was not filed within ten days after its execution, as provided by law.

The mortgagor being in default, respondent proceeded to foreclose its mortgage by notice and sale. The appellant commenced this action to enjoin the sale and to remove the controversy to the superior court. The respondent bank filed an answer and cross-complaint. On the 21st day of March, 1923, findings of fact, conclusions of law and decree were entered in favor of the respondent bank, giving judgment against Miller and Garvey and foreclosing and establishing its mortgage as the first lien upon the property. On April 27, 1923, the property was sold for $1,250 as per order

of the court, reserving all rights of all the parties in interest. On June 2 and 18, respectively, appellants Brown Shoe Company and S. A. Soames intervened.

The mortgage of the respondent bank is attacked upon the ground that it was not filed within ten days after its execution, and that it was upon a shifting stock of merchandise and no accounting was required by the mortgagee as provided by the terms of the mortgage, and the proceeds of the sales had not been applied to the mortgage indebtedness as the law required. The intervening creditors contend that both mortgages are invalid. The trial court found the mortgage held by the Union State Bank of Wapato to be valid and superior to that of appellant and to the claims of general creditors, and entered judgment accordingly, from which judgment this appeal is taken.

The mortgage provided that:

"It is agreed that the mortgagors are at all times until the final payment of this mortgage to keep a stock of goods on hand equal to the invoice price of said stock now in said building. That they shall have the right and privilege to continue in possession of the chattels above described and to dispose of them in the usual course of trade, but that said mortgagors shall, as said property is sold, apply the proceeds to the mortgage debt or account for such sales to the mortgagee, and that as said stock is sold and new stock is purchased in lieu thereof the same shall stand as security for the debt to the same extent and to the same purpose as the stock now on hand is covered by said chattel mortgage. The mortgagors agree at the end of each and every month to render a statement to the mortgagee showing the mortgaged property sold and the amount replaced in lieu thereof and shall pay to the mortgagee the amount of any and all sales made of said stock, which is covered by said mortgage. The amount so accounted for to the mortgagee shall be paid on the mortgage debt or if not so paid like goods of like value may be substituted therefor."

It is contended that these provisions of the mortgage were not complied with and that, under the rule laid down in *Keyes v. Sabin,* 101 Wash. 618, 172 Pac. 835, and *Miller v. Scarbrough,* 108 Wash. 646, 185 Pac. 625, the court erred in sustaining the mortgage of the respondent bank.

It appears that the cashier of the bank called upon the mortgagor in June or July and was informed that the sales were no more than sufficient to replenish the stock. The trial court found that:

"The business was a losing venture at all times, and the profits from the proceeds of the sales were at no time more than sufficient to keep the stock of goods replenished, and that proceeds of the sales were never available for the purpose of reducing the mortgage debt."

Appellant Asbury knew this fact and knew that nothing had been paid upon the mortgage of the bank. In view of these facts, the failure of the mortgagor to account and apply the proceeds of sales to the bank mortgage in no way affected appellant Asbury, the second mortgagee. *In re McLean,* 270 Fed. 348.

It appears that, at the time appellant Asbury took his mortgage upon the property, he had knowledge of the fact that his mortgagor had purchased the property subject to the mortgage of respondent. His mortgage is therefore subject to the mortgage of respondent, even though the mortgage of respondent was not filed within ten days of its execution. *Clark v. Kilian,* 116 Wash. 532, 199 Pac. 721; *Othello State Bank v. Case Threshing Machine Co.,* 113 Wash. 680, 194 Pac. 563.

The sheriff having taken possession of the stock of goods under the mortgage and the same having been sold in the foreclosure proceedings, the general creditors, having acquired no lien upon the property in con-

troversy, cannot thereafter question the validity of the mortgage. *Watson v. First Nat. Bank,* 82 Wash. 65, 143 Pac. 451; *Kato v. Union Oil Co.,* 92 Wash. 473, 159 Pac. 692; *Haskins v. Fidelity Nat. Bank,* 93 Wash. 63, 159 Pac. 1198.

The judgment is affirmed.

MAIN, C. J., BRIDGES, PARKER, and TOLMAN, JJ., concur.